UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-23401-ALTMAN

ACCELERANT SPECIALTY INSURANCE CO. *et al.*,

*Plaintiffs/Counter-Defendants*,

*v.*

JORGE ZUBIGARAY,

*Defendant/Counter-Claimant.*

_____/

**ORDER**

The issue in this case is whether the Plaintiffs can void their insurance policy for the Defendants' vessel *either* because of the Defendant's failure to comply with the survey-compliance warranty *or* under the doctrine of *uberrimae fidei*. Because we find that the Defendant *both* breached an express warranty of the insurance policy *and* made material misrepresentations on his application, we GRANT the Plaintiffs' Motion for Summary Judgment.

BACKGROUND

I.       Procedural Background

On September 4, 2024, our Plaintiffs—Accelerant Special Insurance Company and Texas Insurance Company—filed this action for declaratory judgment against Defendant Jorge Zubigaray. *See generally* Complaint [ECF No. 1]. The Plaintiffs seek a declaration that the marine insurance policy they issued to Zubigaray (the "Policy") is "void from its inception" based on Zubigaray's breach of the Policy's survey-compliance warranty and his misrepresentation of certain material facts in his insurance application. *Id.* ¶ 24.

On April 23, 2025, the Plaintiffs filed a Motion for Summary Judgment ("MSJ") [ECF No. 23]. Three months later, the Plaintiffs filed a Notice of Ninety Days Expiring ("Notice") [ECF No.

24] pursuant to Southern District of Florida Local Rule 7.1(b)(4). In their Notice, the Plaintiffs observed that the "Defendant/Counterclaimant, Jorge Zubigaray did not file a response to [the Plaintiffs'] Motion for Summary Judgment, nor to [the Plaintiffs'] Statement of Material Facts in Support of [the Plaintiffs'] Motion for Summary Judgment." Notice at 2 n.2 (cleaned up). And it's true. Despite a deadline of May 7, 2025, Zubigaray hadn't filed a response to the MSJ or sought an extension of time as of July 23, 2025. *See generally* Docket.

On July 30, 2025, Zubigaray filed his Response in Opposition to the MSJ ("Response") [ECF No. 26]—84 days late and without seeking leave to file out of time. In his Response, Zubigaray wrote: "Defendant did not previously file a response with the understanding that the parties had stipulated that response wasn't due until after the completion of the mediation that took place on July 29, 2025." Response at 1 n.1.

On August 1, 2025, we issued a paperless order requiring the parties to explain Zubigaray's delayed filing and to tell us whether they'd actually stipulated to a later deadline. *See* Paperless Order Dated August 1, 2025 [ECF No. 28] ("Parties may not stipulate around the deadlines in our Local Rules. If, however, the Plaintiffs in fact agreed to extend the Defendant's time to respond to the Motion, and the Defendant was simply confused, then we're inclined to excuse his late filing. By August 4, 2025, then, the Defendant must file a motion for an extension of time under Federal Rule of Civil Procedure 6. That motion must comply with the conference requirement in Local Rule 7.1(a)(2). If the motion is unopposed, we'll excuse the late filing. If it's not, we'll allow the Plaintiffs to explain what (if anything) they actually agreed to with the Defendant." (emphasis removed)). The Plaintiffs responded to our paperless order with the following attorney declaration: "[The] Defendant's statement that he 'did not previously file a response with the understanding that the parties had stipulated that response wasn't due until after the completion of the mediation that took place on July 29, 2025' is inaccurate, disingenuous, and a complete misrepresentation of discussions

2

between the parties' counsel. For clarity, I never had any conversations with Defendant's counsel about an extension of time for [the] Defendant to respond to [the Plaintiffs'] Motion for Summary Judgment [ ] let alone a stipulation in this regard." Declaration of Melaina D. Haisfield [ECF No. 29] ¶¶ 8–9. Zubigaray responded with a motion, in which his lawyer wrote as follows: "[A]lthough Defendant does not believe that Plaintiffs' counsel is being disingenuous, undersigned counsel stands by the recollection that the conversation was had pertaining to filing the response after the completion of the mediation." Motion for Extension of Time [ECF No. 30] at 2.

After reviewing both parties' filings, we denied Zubigaray's Motion for Extension of Time because he'd failed to demonstrate that his 84-day delay was excusable. *See* Paperless Order Dated September 4, 2026 [ECF No. 33]. We'll therefore adjudicate the Plaintiffs' MSJ based only on the filings we have before us. *See McDuffie v. Broward Cnty., Fla.*, 654 F. App'x 408, 412 (11th Cir. 2016) (upholding the district court's decision to strike a summary-judgment response filed 11 days late because "[a]t least where the opposing party is not a pro se litigant, the district court may properly require conformity with local rules specifying the time in which to respond to a motion for summary judgment." (cleaned up)).

## II.     The Facts

In 2023, Zubigaray sought to have the Plaintiffs insure his 2005 62' Azimut motor yacht ("Vessel"). *See* Plaintiffs' Statement of Material Facts ("PSMF") [ECF No. 22] ¶ 1. "When [Zubigaray] applied for insurance for the Vessel, he filled out, signed, and submitted an application with the assistance of his agent (the 'Application')[.]" *Id.* ¶ 2; *see also* Application [ECF No. 1-2]. The Application asked: "Have you or any named operated [*sic*] been convicted of a criminal offence or pleaded no contest to a criminal action?," to which Zubigaray responded: "No." Application at 3 (capitalization altered). The Application also asked for information regarding "Violations/Suspensions (including auto) in the last 5 years," to which Zubigaray responded: "N/A[.]" *Ibid.* "In response to [Zubigaray's]

3

submission of the Application, [the Plaintiffs] insured the Vessel's hull under Policy No. CSRYP/226840, with effective dates of July 13, 2023, to July 13, 2024[.]" PSMF ¶ 10; *see also* Policy [ECF No. 1-1]. "The Policy insured the Vessel's hull for $600,000, subject to a $48,000 deductible." PSMF ¶ 10 (cleaned up).

As it turns out, Zubigaray's application was inaccurate. He in fact had several previous convictions *and* recent citations for traffic violations. *See* PSMF ¶ 25 ("Defendant, Jorge Zubigaray, was arrested and subsequently convicted of perjury, fleeing and alluding law enforcement, aggravated assault, and extortion in 1997, for which he served two years in prison." (cleaned up)); *see also id.* ¶ 26 ("In addition, Defendant, Jorge Zubigaray, was arrested and convicted of possession of a firearm by a convicted felon in 2004 and served a second prison term between 2004 and 2010." (cleaned up)); *id.* ¶ 27 ("Defendant, Jorge Zubigaray, was also cited and convicted for numerous automobile violations, including failure to stop at a traffic light in 2018, failure to wear a seatbelt in 2019, unlawful speed in 2020 and 2021, reckless driving in 2020, and tints and expired tags in 2022." (cleaned up)). The Plaintiffs have made clear—and their underwriter, Beric Usher, has confirmed—that they would "absolutely not have written the Policy had [Usher] or [the Plaintiffs] known about [the] Defendant's convictions." PSMF ¶ 33 (citing Declaration of Beric Usher ("Usher Decl.") [ECF No. 22-5] ¶ 15). Plus, General Condition xiii of the Policy states: "This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to Our acceptance or continuance of this insurance. No action or inaction by Us shall be deemed a waiver of this provision." Policy at 14.

> The Policy also includes the following survey warranty under General Condition xviii:
>
> Unless We agree in writing to the contrary, if We request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by Us within 30 days of the effective date of this Insuring Agreement. If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder,

by skilled professionals using fit and proper materials and that either: (a) The surveyor who carried out the survey certifies in writing that all recommendations have been completed to their (the surveyor's) satisfaction prior to any loss and/or claim. Or, (b) The professionals/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this Insuring Agreement from inception.

*Id.* at 15.

As part of his application, Zubigaray gave the Plaintiffs a Marine Risk Survey, dated March 26, 2021, that included several "Must Recommendations," each of which required remediation so that the Vessel could be "deemed an acceptable Fire and Marine Risk." Marine Risk Survey [ECF No. 1-4] at 13. At his deposition, Zubigaray admitted that at least "two must recommendations," one involving an electrical outlet and the other involving the Vessel's life raft, "were not completed as of the time of the loss." PSMF ¶ 17 (citing Deposition of Jorge Zubigaray ("Zubigaray Depo.") at 77:16–78:21, 78:25–79:4, 79:10–15, 84:22–86:2, 91:23–92:1). Usher has sworn that he wouldn't have issued the Policy under the same terms if he'd known that Zubigaray didn't intend to remediate all the "Must Recommendations." Usher Decl. ¶ 10; *see also ibid.* ("[H]ad Zubigaray informed me that he did not intend to comply with the survey compliance warranty, or if he told me that he had not completed all recommendations in the condition and marine risk survey report, which he in fact, had not done when the Policy was issued, I would have issued the Policy but placed the Vessel on port risk until all recommendations were addressed.").

Despite his failure to remediate all the "Must Recommendations," Zubigaray "submitted a signed Letter of Survey Recommendations Compliance ('LOC') . . . to [the Plaintiffs], in which [he] represented that all recommendations and repairs detailed on the condition and marine risk survey report were completed as of July 19, 2023." PSMF ¶ 19; *see also* LOC [ECF No. 1-5].

"On May 10, 2024, the Vessel ran aground under the operation of Jorge Zubigaray near the Port of Miami in and around Miami, Florida, resulting in damage to the Vessel (the 'Incident')." *Id.*

¶ 11 (cleaned up). "As a result of the Incident, [the] Defendant made a claim for coverage to [the Plaintiffs] related to salvage and repair costs, after which [the Plaintiffs] commenced an investigation." *Id.* ¶ 12 (cleaned up).

## THE LAW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

6

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record." (quoting FED. R. CIV. P. 56 advisory committee's note)). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

In sum, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex,* 477 U.S. at 323; *see also Lima v. Fla. Dep't of Child. & Fams.*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

## ANALYSIS

### I.      Choice of Law

"As a matter of federal maritime law, choice-of-law provisions in maritime contracts are presumptively enforceable." *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 76 (2024).[1] The Policy includes a choice-of-law provision, which states the following: "It is hereby agreed that any dispute or claim arising hereunder . . . shall be adjudicated according to well established,

---

[1] The parties agree that this is a federal maritime case. *See* Plaintiffs' Unopposed Motion for Bench Trial [ECF No. 32] at 2 ("[B]oth parties designated this action as an admiralty and maritime case under Rule 9(h)[.]"); *see also* Answer, Affirmative Defenses, and Counterclaim ("Answer") [ECF No. 5] at 7 ("This is an admiralty and maritime cause within the meaning of Rule 9(h) for the Federal Rules of Civil Procedure[.]").

entrenched principles and precedents of substantive United States Federal Admiralty Law and practice but where no such well established, entrenched precedent exists, any dispute or claim arising hereunder . . . is subject to the substantive laws of the State of New York." Policy at 5.

We only disregard maritime contract choice-of-law provisions "when the chosen law would contravene a controlling federal statute, [ ] conflict with an established federal maritime policy [or] . . . when parties can furnish no reasonable basis for the chosen jurisdiction." *Raiders Retreat*, 601 U.S. at 76 (cleaned up). We see no reason to disregard the parties' choice-of-law provision here. The provision doesn't contravene any controlling federal statute or conflict with an established federal maritime policy, and the Plaintiffs have furnished a reasonable basis for their reliance on New York law. *See* MSJ at 4–5 (describing New York's commercial law as "well-known and highly elaborated" (cleaned up)). The Defendant apparently agrees that New York law applies here, since he invokes it in his second affirmative defense. *See* Answer at 4 ("Defendant avers that under New York Insurance Law Section, an insurance company may rely on misrepresentations in application for insurance to deny coverage as follows . . . [.]"). We'll therefore look first to federal maritime law—and, where no "well established, entrenched precedent" exists, we'll apply New York law. Policy at 5.

## II.     Breach of Survey-Compliance Warranty

The Plaintiffs first argue that "Zubigaray breached an express warranty under the Policy, which required him to correct survey deficiencies," and that Zubigaray's violation of this express warranty voided the Policy. MSJ at 5. We agree.

### A. Zubigaray Breached the Survey-Compliance Warranty

There can be no dispute that Zubigaray breached the survey-compliance warranty. The Policy required Zubigaray to submit a Marine Risk Survey (which he did) and made the following quite clear: "[I]f the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder . . .

and that either . . . [t]he surveyor who carried out the survey certifies in writing that all recommendations have been completed . . . or [t]he professionals/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this Insuring Agreement from inception." Policy at 15. Zubigaray's Marine Risk Survey required him to address (and to certify in writing that he'd done so) certain deficiencies *before* he could any loss against the Policy. *See* Marine Risk Survey at 13.

Zubigaray concedes that he didn't address all the recommendations the Marine Risk Survey required him to address. *See, e.g.*, Zubigaray Depo. at 78:11–14 ("Q: And did you address both these lists, both the 'must recommendations' and the 'deficiencies'? A: Yes. Except for a few things, and I could point them out."); *id.* at 78:20–23 ("A: Okay 'A European 50 Hertz,' number five, okay, 'was sighted in the galley,' that was not changed. Okay. That was changed after the fact, you know, when they brought it to my attention again."); *id.* at 79:10–15 ("Q: And then your testimony is, aside from number five, all the other one through [twenty-three] were done before the incident? A: Yes. Wait. Number [fifteen]. Q: Number [fifteen] was not done, correct? A: No.").

Zubigaray also failed to provide the Plaintiffs "with any written certification that the recommendations in the condition and marine risk survey report, dated March 26, 2021, were completed," as the Policy required. PSMF ¶ 20 (cleaned up); *see also* Zubigaray Depo. at 98:19–25 ("Q: Is there any reason why you didn't get anyone to certify that the 'must recommendations' were completed? A: No, ma'am. I didn't know I needed that. I mean, I didn't know -- I didn't know I needed to do that if it was done. I didn't know I had to get someone out and certify something and put it in writing[.]"). Zubigaray's failure to remediate every "must recommendation" in the Marine Risk Survey *and* his failure to provide the Plaintiffs with written certification that the "must

9

recommendations" had been addressed constitute unambiguous breaches of the Policy's survey-compliance warranty.

### B.  Zubigaray's Breach Voided the Policy

Having established that Zubigaray breached the Policy's survey-compliance warranty, we must now determine whether that breach voided his coverage under the Policy. Before we can do that, we must decide which law applies to the breach. As the Eleventh Circuit explained in *Ocean Reef*, federal maritime law requires strict compliance with navigational and seaworthiness warranties, *see Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 996 F.3d 1161, 1169 (11th Cir. 2021), but there's "no firmly established federal maritime precedent governing express [ ] survey-compliance warranties," *Clear Spring Prop. & Causalty Co. v. Viking Power LLC*, 608 F. Supp. 3d 1220, 1226 (S.D. Fla. 2022) (Altonaga, C.J.) ("*Viking I*") (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 314–16 (1955)). Because survey-compliance warranties aren't "the subject of a uniform or entrenched federal admiralty rule," New York law governs the Plaintiffs' breach-of-survey warranty claim here. *Ocean Reef*, 996 F.3d at 1167.

Under New York law, the breach of an express warranty in a maritime insurance contract "comes with great consequence" and can void coverage. *Clear Spring Prop. & Cas. Co. v. Viking Power LLC*, 2022 WL 17987116, at *4 (S.D. Fla. Sept. 8, 2022) (Altonaga, C.J.) ("*Viking II*") (applying New York law). "New York law permits marine insurers to deny coverage for breaches of promissory warranties regardless of whether the breach is causally connected to a later loss." *Ibid.* (cleaned up); *see also Cunningham v. Ins. Co. of N. Am.*, 521 F. Supp. 2d 166, 170 (E.D.N.Y. 2006) ("New York courts [ ] have long held that breaches of marine insurance contracts—even ones relating to lay-up or docking requirements—need not be material in order for the insurer to disclaim coverage . . . New York Insurance Law § 3106(c) exempts marine insurance contracts from the general rule that a breach of a warranty must be material in order for the insurer to disclaim coverage." (cleaned up)); *Royal Ins. Co.*

*of Am. v. Harbor Shuttle, Inc.*, 1999 WL 33236523, at *6 (E.D.N.Y. Jan. 25, 1999) ("New York Insurance Law regulates the effect of warranty breaches. The settled rule holds that a breach of warranty will not 'avoid an insurance contract.' However, Section 3106 also mandates that 'this section shall not affect the express or implied warranties under a contract of marine insurance in respect to, appertaining to or in connection with any and all risks or perils of navigation, transit or transportation.' A breach of marine insurance warranty that pertains to any risk of navigation or transportation voids coverage. The breach of warranty will void the policy even if the warranty violation did not materially increase the risk of a loss or actually cause the loss." (cleaned up)).[2]

And our Policy makes clear that a breach of the survey-compliance warranty *would* void coverage—whether or not the loss or claim was related to the warranty. *See* Policy at 15 ("Failure to comply with this warranty will void this Insuring Agreement from inception."); *see also Cunningham*, 521 F. Supp 2d at 149 ("The New York Court of Appeals and the Second Circuit have made clear, however, that insurers must explicitly and clearly indicate that a breach permanently ends coverage if that is their intention."). In short, Zubigaray breached the Policy's survey-compliance warranty by failing to comply with all the "Must Recommendations" identified in the Marine Risk Survey *and* by failing to provide the Plaintiffs with written certification that the required repairs had been made. Under New York law, the breach of an express warranty of a marine insurance contract is sufficient to void coverage. We therefore find that the Policy is void as a matter of law.

### III.    Breach of *Uberrimae Fidei*

The Plaintiffs argue that Zubigaray also breached the federal maritime doctrine of *uberrimae fidei* when he "made numerous material misrepresentations" on his insurance application. MSJ at 10. It's well-established that "the marine insurance doctrine of *uberrimae fidei*" is an entrenched federal

---

[2] There can be no doubt that a survey-compliance warranty requiring the insured to correct deficiencies with a vessel's marine and fire risk is related to "any and all risks or perils of navigation, transit, or transportation[.]" New York Insurance Law § 3106(c).

maritime rule. *Quintero v. Geico Marine Ins. Co.*, 983 F.3d 1264, 1270 (11th Cir. 2020). So, we'll apply federal maritime law to this part of our analysis.

The maritime doctrine of *uberrimae fidei* (*i.e.*, "utmost good faith") requires "that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk." *HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000); *see also Great Lakes Ins. SE v. Sunset Watersports, Inc.*, 570 F. Supp. 3d 1252, 1261 (S.D. Fla. 2021) (Dimitrouleas, J.) ("The doctrine of *uberrimae fidei*, or utmost good faith, requires an insurance applicant to voluntarily and accurately disclose to the insurance company all facts which might have a bearing on the insurer's decision to accept or reject the risk."). This "duty to disclose extends to those material facts not directly inquired into by the insurer" and "includes all material facts that are within or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge." *Quintero*, 983 F.3d at 1271 (cleaned up). A fact is "material" if it "could 'possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk.'" *Sunset Watersports*, 570 F. Supp. 3d at 1261 (quoting *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 942–43 (11th Cir. 1986)). "Under *uberrimae fidei*, a material misrepresentation on an application for marine insurance is grounds for voiding the policy." *HIH Marine Servs.*, 211 F.3d at 1363. This harsh penalty applies even if the misrepresentation was mistaken or inadvertent. *See Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir. 1984) ("[T]he insured is bound to communicate every material fact within his knowledge not known or presumed to be known to the underwriter, whether inquired for or not; and [ ] a failure in either particular, although it may arise from mistake, accident, or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void, for the reason that the risk assumed is not the one intended to be assumed by the parties." (quoting *Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*, 409 F.2d 974, 980 (5th Cir. 1969))).

### A. Zubigaray Made Material Misrepresentations on the Application

The Plaintiffs allege that Zubigaray made three material misrepresentation on the Application. *First*, they say that Zubigaray misrepresented that he'd corrected all the deficiencies identified in the Marine Risk Survey. *See* MSJ at 10–11 ("His first misrepresentation, embodied in the Letter of Survey Recommendations Compliance [ ] he submitted with his insurance applications, was that he had corrected all the deficiencies listed in the March 26, 2021, Condition & Marine Risk Survey Report."). According to the Plaintiffs, "[t]hat letter was false when it was submitted to [the Plaintiffs] because Zubigaray admitted that he neither completed all the deficiencies nor provided [the Plaintiffs] with written certification that all such outstanding deficiencies were completed." *Id.* at 11. The LOC submitted with the Application—electronically signed by Zubigaray—attests as follows: "I certify, as owner of the above vessel, that all recommendations pertaining to the above vessel contained within the detailed survey submitted herein, have been complied with., other than those listed below, along with the date of expected completion (please reference the recommendation number as detailed on the survey where appropriate)[.]" LOC at 1. No outstanding recommendations are "listed below[.]" *Ibid.*

We agree with the Plaintiffs that this part of Zubigaray's certification constituted a material misrepresentation. Zubigaray's compliance with the recommendations in the Marine Risk Survey was crucial to the Plaintiffs' (and Usher's) decision to insure the Vessel under the agreed-upon terms. *See* Usher Decl. ¶ 10 ("Had Zubigaray informed me that he did not intend to comply with the survey compliance warranty, or if he told me that he had not completed all recommendations in the condition and marine risk survey report, which he in fact, had not done when the Policy was issued, I would have issued the Policy but placed the Vessel on port risk until all recommendations were addressed.").

Plus, the LOC provides that "[a]ny misrepresentation in this letter of compliance may render insurance coverage null and void from inception." *Ibid.* And Zubigaray was the only party who could have known whether the recommendations had been complied with. *See Quintero*, 983 F.3d at 1271

13

(explaining that the duty to disclose extends to "all material facts that are within or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge" (cleaned up)).

*Second*, the Plaintiffs claim that Zubigaray's "second, and most critical misrepresentation, was that he had never been convicted of a criminal offense." MSJ at 11. Again, we agree. As we've discussed, Zubigaray had multiple criminal convictions when he completed his Application. *See* PSMF ¶ 25 ("Defendant, Jorge Zubigaray, was arrested and subsequently convicted of perjury, fleeing and alluding law enforcement, aggravated assault, and extortion in 1997, for which he served two years in prison." (cleaned up)); *see also id.* ¶ 26 ("In addition, Defendant, Jorge Zubigaray, was arrested and convicted of possession of a firearm by a convicted felon in 2004 and served a second prison term between 2004 and 2010." (cleaned up)). But his Application denied that he had any convictions. And the Plaintiffs have submitted an unrebutted declaration from their underwriter, swearing that these convictions were material to the decision to insure Zubigaray. *See* Usher Decl. ¶ 16 ("[P]ursuant to certain underwriting guidelines, we would never insure anyone with a conviction for any offense involving dishonesty, which Zubigaray has, but did not disclose.").[3]

*Third*, the Plaintiffs argue that "Zubigaray failed to disclose numerous traffic citations and/or violations in accordance with the terms and conditions of the Policy." MSJ at 11. As we've discussed, it's undisputed that Zubigaray (1) had several recent traffic citations and (2) failed to disclose them on

---

[3] The unrebutted testimony of a carrier's underwriter is typically sufficient to establish the materiality of a misrepresentation at the summary-judgment stage. *See Certain Underwriters at Lloyds, London v. Giroire*, 27 F. Supp. 2d 1306, 1313 (S.D. Fla. 1998) ("To establish materiality, Lloyds provided the unrebutted affidavit of Mr. Burke A. Usher, an underwriter for Lloyds, in which Usher testifies that had Lloyds received a truthful 'yes' answer to the question whether the boat was used for racing, Lloyds would have declined coverage. In light of such uncontradicted evidence, the Court finds that the misrepresentation was material as a matter of law."); *see also St. Paul Fire & Marine Ins. Co. v. Halifax Trawlers, Inc.*, 495 F. Supp. 2d 232, 242 (D. Mass. 2007) ("Halifax does not offer the testimony of any expert or insurance underwriter to rebut the statements of Sterling that the prior incident would influence a reasonable underwriter's judgment. [Therefore,] Halifax's failure to disclose the 2003 incident violated the doctrine of *ubberimae fidei*.").

his application. *See* PSMF ¶ 13 ("Zubigaray also did not disclose numerous citations and convictions for automobile violations, including failure to stop at a traffic light in 2018, failure to wear a seatbelt in 2019, unlawful speed in 2020 and 2021, reckless driving in 2020, and tints and expired tags in 2022."). The Plaintiffs' underwriter has attested to the materiality of these non-disclosures as well. *See* Usher Decl. ¶ 15 ("[H]ad Zubigaray informed me that a named operator had multiple criminal convictions, including one for an offense of dishonesty (perjury), *and automobile citations* during the Policy's application process, I would absolutely not have written the risk at all because such disclosure was material." (emphasis added)).

The Application's specific requests for (1) an LOC, (2) the disclosure of convictions, and (3) information about recent traffic violations—coupled with Usher's unrebutted declaration that all three of these non-disclosures were material to the decision to insure Zubigaray—make clear that Zubigaray's misrepresentations could "possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk" of insuring Zubigaray. *Kilpatrick*, 795 F.2d at 942–43. We therefore find that Zubigaray's misrepresentations were material and "grounds for voiding the policy" under the doctrine of *uberrimae fidei*. *HIH Marine Servs.*, 211 F.3d at 1363.

### B.  There's No Evidence that Zubigaray's Broker was the Plaintiffs' Agent

In his Answer (and stricken Response), Zubigaray suggested that the Plaintiffs should be estopped from voiding his coverage because (he says) the Plaintiffs' agent filled out the application with misleading information. *See* Answer at 5 (claiming that the application "was filled out by Plaintiffs' agent, who had the responsibility to ensure that all information was accurate and complete," and that he "signed the application in good faith, relying on the expertise of Plaintiffs' agent to correctly record Defendant's details").[4] Unfortunately for Zubigaray, there's *no* evidence in the record suggesting that

---

[4] Zubigaray also argues that "the Plaintiffs purported voiding of the policy back to inception is waived or void as a matter of law, as the Plaintiffs have not refunded the premium paid for the allegedly void insurance policy to the Defendant." Answer at 7. But he doesn't cite any authority for the proposition

the insurance broker who assisted him with the Application—Violeta Khouri—was the Plaintiffs' agent.

"Under New York law, an insurance broker generally is considered the agent of the insured, not the agent of the insurer." *Clear Spring Prop. & Cas. Co. v. Dream On Yacht LLC*, 754 F. Supp. 3d 1234, 1247 (S.D. Fla. 2024) (Altman, J.) (cleaned up). When a broker is acting only on behalf of the insured, "notice to the broker is not notice to the liability carrier." *Ibid.* (cleaned up). "Notice to the broker will constitute notice to the insurer, however, if it is established that the broker was acting as the carrier's agent. A broker will be held to have acted as the insurer's agent where there is some evidence of action on the insurer's part, or facts from which a general authority to represent the insurer may be inferred." *Ibid.* (cleaned up). So, if Khouri was the Plaintiffs' agent, *perhaps* her alleged knowledge of Zubigaray's criminal record could be imputed to the Plaintiffs. But we have no evidence of any of this.

There are, however, at least three pieces of evidence that Khouri was *not* the Plaintiffs' agent. *First*, in his deposition, Zubigaray repeatedly referred to Khouri as *his* agent. *See* Zubigaray Depo. at 50:23–51:4 ("Q: When you first purchased ANDIAMO, who were you insured with? A: Same agent. I don't remember the company that she put me with. Q: So Violeta? A: Yeah. She -- she is the agent that I use – I've been using for many years for my cars and everything so -- my house, everything, so she's – she's the one that handles all that."); *id.* at 56:1–8 ("A: [Khouri is] my insurance agent for the – for my cars. I just got insurance with State Farm for the vessel, and she had everything disclosed, like. . . . I'm going to tell you again. [Khouri] is my agent."); *id.* at 69:1–7 ("Q: But you will agree that they weren't indicated or disclosed on your insurance application? A: That's great, but my agent knew

---

(and we haven't found any) that an insurer can't seek declaratory relief until it refunds a premium. *Cf. Accelerant Specialty Ins. Co. v. Ballard*, 2025 WL 1148440, at *8 (S.D. Fla. Apr. 17, 2025) (Singhal, J.) ("Accelerant seeks declaratory judgment and, therefore, it is not required to return the premium unless and until the Court declares that there is no coverage available under the Policy.").

and she's the one that filled it out. My agent does my insurance. She knows what tickets I have. She knows what I don't have. She knows what my driving record is, so she needed to disclose that.").

Later in the deposition, Zubigaray speculated that Khouri *may* also have been the Plaintiffs' agent, but he didn't explain why he thought that. *See id.* at 59:16–17 ("A: Isn't [Khouri] your guy's agent as well or your broker?"); *see also id.* at 112:5–10 ("Q: How do you know that your agent, Violeta, is an agent of my client? A: You filled out -- she had your form. The application that was filled was your guys' application, so based on it's your guys' application, you guys should have reviewed that application itself."); *id.* at 113:1–17 ("Q: So I guess I'm just confused. Why do you think [Khouri] is an agent for Accelerant and Texas Insurance? A: Okay. On the one name is the application that I filled out. Who -- who – what's the name of the application? Who is on top of the application? You guys. Q: The application – A: It says 'Concept Risk -- Special Risks.' Q: All right. Violeta -- Violeta doesn't work for Concept Special Risk, correct? A: Yeah, but that's your application though. That's their application. That's their direct application. She does not have an application that she had made up on her own. That's you guys' application. You guys -- she submitted the application to you guys for review. Q: But similarly, she submitted a form that she got from State Farm presumably for your current vessel insurance, correct? A: I don't know.").

*Second*, Usher's sworn declaration identified Khouri as Zubigaray's agent. *See* Usher Decl. ¶ 2 ("When Defendant applied for insurance for the Vessel, he filled out, signed, and submitted an application with the assistance of his agent[.]").

*Third*, General Condition viii of the Policy explicitly states: "If You have used a broker to effect coverage, it is hereby agreed that Your brokers or any substituted brokers . . . shall be deemed to be exclusively the agents of You and not of Us in any and all matters relating to, connected with or affecting this insurance." Policy at 13.

The record thus supports the conclusion the Khouri acted as Zubigaray's agent—and not as the Plaintiffs' agent. This means that knowledge of Zubigaray's inaccurate LOC, previous convictions, and recent traffic violations can't be imputed to the Plaintiffs under the doctrine of *uberrimae fidei*, and that the Plaintiffs therefore aren't estopped from voiding Zubigaray's coverage.

### CONCLUSION

Zubigaray breached the Policy's survey-compliance warranty. And there's no dispute that either Zubigaray or his agent made several material misrepresentations on the Application. Under New York substantive law and the federal maritime doctrine of *uberrimae fidei*, these transgressions are sufficient to void Zubigaray's insurance coverage. Accordingly, the Plaintiffs are entitled to a declaration that Zubigaray's Policy is void from its inception and doesn't provide coverage for any claims arising from or associated with the Incident.

We can also dispose of Zubigaray's counterclaim for breach of contract. *See* Answer at 9–10. This claim depends on the existence of a marine insurance contract between the parties—but, since the Policy is void, there is no such underlying contract. *See Dream On*, 754 F. Supp, at 1251 (disposing of the defendant's counterclaims under similar circumstances); *see also Quintero v. Geico Marine Ins. Co.*, 389 F. Supp. 3d 1153, 1161 n.3 (S.D. Fla. 2019) (Ungaro, J.) ("[U]nder *uberrimae fidei*, [the] Policy is void *ab initio*, and therefore any limits on cancellation are irrelevant; the Policy is not cancelled, it never came into effect."), *aff'd*, 983 F.3d 1264 (11th Cir. 2020)). Without a valid underlying contract, Zubigaray's counterclaim is **DENIED** as moot.

\* \* \*

Accordingly, we **ORDER and ADJUDGE** as follows:

1.  The Plaintiffs' Motion for Summary Judgment [ECF No. 23] is **GRANTED**.

18

2.  Summary Judgment is **ENTERED** in favor of the Plaintiffs, Accelerant Special Insurance Company and Texas Insurance Company, and against the Defendant, Jorge Zubigaray, on Counts I and II of the Plaintiffs' Complaint [ECF No. 1].

3.  We now **DECLARE** that:

    a.  Zubigaray breached the Policy's survey-compliance warranty, and, as a result, the Policy is void and does not provide coverage for any claims arising from or associated with the Incident.

    b.  Zubigaray violated the doctrine of *uberrimae fidei*, and, as a result, the Policy is void from its inception and does not provide coverage for any claims arising from or associated with the Incident.

4.  Count III of the Plaintiffs' Complaint [ECF No. 1] is **DISMISSED as moot**.

5.  The Defendant's Counterclaim for Breach of Contract [ECF No. 5] is **DISMISSED as moot**.

6.  Pursuant to Federal Rule of Civil Procedure 58, the Court will enter final judgment separately.

7.  This case shall remain **CLOSED**. All pending deadlines are **TERMINATED** and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on May 16, 2026.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record